THEODORA A. PECK *v.* CITY TRUST COMPANY ET AL.

May Term, 1931.

Present: SLACK and THOMPSON, JJ., and GRAHAM, BUTTLES, and STURTEVANT, Supr. JJ.

Opinion filed October 6, 1931.

*Charles F. Black* and *Stickney, Sargent & Chase* for the plaintiff.

*Warren R. Austin* and *Edwin W. Lawrence* for the defendants.

STURTEVANT, Supr. J. ■ This is an action brought by Theodora A. Peck of Burlington, Vermont, against the City Trust Company et al., to cancel and set aside two voluntary declarations of trust and two quit-claim deeds accompanying same, for reasons set forth in her declaration, including the alleged fraud of one Walter Isham and the alleged mistake of the plaintiff. The case was heard on the bill and answer and findings of fact by the chancellor. Decree dismissing the bill was entered, to which an exception was duly filed and allowed. The case is here on the plaintiff's appeal. Exceptions to certain findings, to the denial of certain requests for findings, and to the decree dismissing the bill have been reserved for review. Exceptions II, III, VII, VIII, and IX are not briefed, and hence are treated as waived. *Gray et al.* v. *Brattleboro Trust Company,* 97 Vt. 270 at page 274, 122 Atl. 670.

From the findings it appears that plaintiff's mother, Agnes Leslie Peck, died November 15, 1917, and her father, General Theodore S. Peck, died March 15, 1918, leaving plaintiff as sole devisee, subject to payment of an annuity of $780.00 to one Jennie Wood, of three parcels of real estate in the city of Burlington, *viz.:* The homestead, No. 375 College Street; a series of eight apartment houses, commonly known as "Leslie Terrace," located at the corner of South Union and College Streets; and a brick business block, No. 152 and No. 154 College Street.

Plaintiff's parents also left her a quantity of securities, including a majority of the stock in the Peck Insurance Agency. The total value of all property so left to plaintiff was about $125,000.

Plaintiff was about thirty-five years of age at the time of her father's death, had no business training or experience while her father was living, and she had very little such experience prior to executing the instruments here in question. Plaintiff has a considerable literary talent, and is the authoress of three published books.

In 1880 Walter Isham entered the employ of General Peck, and in 1882, through the aid of General Peck, Mr. Isham became an employee of the Merchants National Bank, in Burlington, has remained there since, and is now vice president of that institution.

General Peck was evidently much concerned as to what would become of his property after his death. He had many

talks with Isham on this subject dating back as far as 1912. General Peck left several letters to Isham personally and several letters to his daughter to be delivered by Isham after his (Peck's) death, setting forth his ideas and wishes. From 1880 until General Peck's death Isham had very close social and business relations with him. General Peck often expressed the wish that Isham should look after his daughter after the General's death. The matter of putting General Peck's property in trust and the ultimate disposition of same was one of the subjects discussed with Isham.

After General Peck's death, Mr. Isham assisted the plaintiff with her business matters and was her confidential adviser from that time until sometime after the papers in question here were executed. During this period plaintiff frequently consulted with Mr. Isham as to her property and placed great confidence in him. Plaintiff executed a will soon after her father's death. Soon after this she and Isham began to talk about putting her Leslie Terrace property and business block in trust. Isham had necessary papers prepared to accomplish this, and on July 28, 1919, upon notice from Isham, plaintiff went to the bank, was shown the first declaration of trust and quit-claim deed. She read these papers and executed them. In the spring of 1920, plaintiff asked Isham if her home place could not be put into a similar trust, and also mentioned putting her securities in a trust. Isham assented, but suggested making the securities trust so it could be changed. The papers creating the second real estate trust and the securities trust were procured by Isham. Upon notice from Isham, plaintiff went to the bank May 3, 1920, read the papers, and executed them. These trust agreements were of no benefit to Isham, except to relieve him of caring for plaintiff's real estate, a service for which plaintiff paid him.

I. The plaintiff's first exception is taken to what may be deemed a preamble to the findings. The part of the sentence excepted to is, "because of the alleged fraud of one Walter Isham and because of the alleged mistake of the plaintiff." This exception is upon the ground that the causes for setting aside the trust include other causes than as stated by the chancellor. The plaintiff contends that from the evidence it must be concluded:

(1) That Isham was confidential adviser to Miss Peck and knew that she was dependent and relied upon him; (2) That Isham knew that the trusts were irrevocable; (3) That he withheld that fact and failed to inform Miss Peck for purposes of his own; and (4) That she never knew that the declarations of trust could not be revoked until on or about November 6, 1924, which was several years after their execution.

The plaintiff's alleged "other causes" are included in the term "fraud." This is in accordance with the previous holding of this Court in the case of *Newell Brothers* v. *Hanson,* 97 Vt. 297, at 304, 123 Atl. 208, 210, where it is stated: "But fraud may be committed by the suppression of truth as well as by the suggestion of falsehood. The test of liability for failure to disclose facts material to the transaction is some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge. When in the circumstances of the particular case such duty is present, failure to disclose a material fact with intention to mislead or defraud is equivalent to a fraudulent concealment of the fact, and stands no better than the affirmation of a material misrepresentation."

■ IV. The plaintiff's fourth exception is taken to the statement in the sixth paragraph of the findings: "Carrying out her father's wishes she transferred ten shares of this stock to Isham and had him elected a director and president of the Agency." The exception is upon the ground that there is no evidence in the case tending to show that it was the wish of the plaintiff's father that any stock should be transferred to Isham or that he should be elected a director and president of the insurance agency.

At the time this stock was transferred to Isham, the plaintiff was the owner and holder of a large amount of stock in the Peck Agency. It was General Peck's wish expressed to Theodora that Isham should look after Theodora's business after the General's death, and the General had requested Isham so to do. This stock was given to Isham to keep as the plaintiff testified, while he represented her interests in the agency, and this stock was returned to her by Isham in 1925 when he ceased to be a director and president of the agency. Isham testified in effect that he thought ten shares of this stock must be transferred to him in order to qualify him to hold the office of director

because of the Vermont law relating to banks upon this subject. Since it is a conceded fact in this case that General Peck did wish Isham to look after Theodora's business after he was gone, in doing so Isham would be carrying out the General's wishes, and it necessarily follows that the doing of any act necessary to place Isham in a better position to do this was an act "in carrying out the General's wishes." Such were the acts of transferring the stock and having Isham elected a director and president of the Peck Insurance Agency.

■ V. The plaintiff's fifth exception is taken to the statement in the sixth paragraph of the findings: "Until sometime in 1921 she reposed great confidence in his friendship, integrity and business ability, and did not transact any business without consulting him about it." This exception is upon the ground that the undisputed evidence in the case shows that the chancellor should have found the conditions mentioned as existing until October of 1924 instead of "until sometime in 1921."

The declarations of trust and the deeds accompanying them were executed, the first on July 28, 1919, and the second one on May 3, 1920. Hence the period during which the stated conditions are found to exist extends until sometime in the year following the execution of the last trust agreement and deed sought to be set aside. Isham testified that in February of 1921 he became alarmed as to the mental condition of the plaintiff because of information he received from her maid and from information contained in a letter from Doctor Sears. He also testified in effect that from this time on he treated the plaintiff differently.

But we need take no further time with this exception because if true that the chancellor should have found as the plaintiff contends, giving consideration to the other findings as made, the result will remain the same, whether the time with which we are concerned in this fifth exception remains as stated or is changed according to the plaintiff's contention. Assuming, but not deciding, that there is error here, the plaintiff is not prejudiced thereby. Hence we give no further consideration to this exception. *Crampton* v. *Lamonda*, 95 Vt. 160, at page 164, 114 Atl. 42; *Waterman* v. *Moody*, 92 Vt. 218, at page 236, 103 Atl. 325.

■ VI. The plaintiff's sixth exception is taken to that part of paragraph seven of the findings, reading as follows: "She

said she wanted to follow her father's wishes so as to protect her from any influence to change her will from where he wanted the property to go.'' The exception is taken upon the ground that the finding is not supported by the evidence.

The plaintiff points out the following testimony given by Mr. Isham, namely: "She said she wanted to follow her father's wishes entirely and do what he wanted done so as to protect her in the future against any influence on the part of relatives or any other influence from changing it from where he wanted it to go eventually.'' The plaintiff complains because the finding contains the words "to change her will'' after the word "influence,'' and insists that there is no evidence that will support the finding as made. Shortly before making the answer above quoted, the witness Isham had given testimony relating to disposition of property by will and trust agreement. The plaintiff had made a will which closely followed her father's wishes as to the disposition of the property in question.

While the plaintiff objects to the chancellor's interpretation of the evidence in question as expressed in his finding, no different or better interpretation of it is offered by her. There is evidence tending to support the finding as made. Therefore the finding stands. *Morgan* v. *Morgan,* 82 Vt. 243, at page 244, 73 Atl. 24, 137 A. S. R. 1006; *Bennington* v. *Filmore & Slade,* 98 Vt. 405, at page 417, 130 Atl. 137; *Houghton et al.* v. *Grimes,* 100 Vt. 99, at page 105, 135 Atl. 15.

X. and XI. For convenience we consider plaintiff's eleventh exception before taking up the tenth exception. This eleventh exception is taken to that part of the eleventh paragraph of the findings below quoted: "These two declarations of trust of real estate, at the time respectively executed, carried out the then desires of the plaintiff.'' The ground of this exception is that the finding is not supported by the evidence.

There is evidence to the effect that, before making the first declaration of trust, the plaintiff said her father always insisted that none of the property should go into the hands of any of his relatives; that the plaintiff said her father always insisted that she should not permit herself to get under the influence of any of these relatives or under any other influence as to her property; that the plaintiff said she wanted to follow her father's wishes entirely and do what he wanted done so as to protect her in the future against any influence on the part of relatives

or any other influence from changing it from where he wanted it to go eventually; that the plaintiff wanted this trust (referring to the first trust) to provide so that no influence on the part of the relatives or any other person or persons would ever persuade her to change her form of investments; that Isham said to the plaintiff on the occasion of the execution of the first trust agreement, when he gave the papers to the plaintiff, ''These are the papers Mr. Sherman has drawn up to carry out your wishes and those of your father,'' and there is also evidence to the effect that she read these papers over before signing; that the plaintiff had been shown some forms of trust agreements by Isham, these on printed forms, and that there were talks between her and Isham that the Leslie Terrace property and the mercantile property would go into such a trust.

There is also evidence to the effect that at the same time the second trust agreement involved in this case was executed, the plaintiff executed a revocable trust agreement covering her personal securities. (This last named trust agreement is not involved in this case.)

There is evidence to the effect that, before these papers creating the second real estate trust and the securities trust were executed, Isham talked with the plaintiff as to whether or not it would be better to put in this securities trust a clause that it could be changed at her pleasure, leaving it entirely in her hands as to what disposition should be made of it, and the plaintiff stated that was the way she wanted it, because she did not know but that in the future, making new friends, she might want to make changes in it.

As to the second trust agreement involving the homestead, there is evidence that the plaintiff wanted it made sure that this property would go to the Beemans and not to any of her relatives; that the plaintiff said she did not want any influence of any kind in the future to induce her to change the ultimate disposition agreeable to the wishes of her father.

There is ample evidence tending to support this finding of the chancellor. Hence it must stand. *Houghton et al.* v. *Grimes, supra.*

The plaintiff's tenth exception is to that part of the ninth paragraph of the findings reading as follows: ''She said she wanted to make sure that the Beemans had the use of her home and that after their death it should go to the University

of Vermont, and asked if that could not be put into a trust agreement similar to the trust agreement covering the other real estate, so that nothing could happen to prevent the Beemans getting her home place." The exception to this finding is upon the ground that it is not in accord with the evidence.

Isham testified in effect, bearing on this subject, that the plaintiff in talking about the kind of trust she wanted for her home place, stated she wanted one the same as the other trust. "Q. What do you mean by that? Are you speaking her words or your ideas? A. Her words. When she asked to have her place which was then in the codicil to the Beemans, she said she wanted it placed in a trust the same as the other one."

Applying what we said with reference to the eleventh exception in connection with what we have said here as to the tenth exception, it is clear that this finding made by the chancellor is in accord with and fairly supported by the evidence.

■ ■ XII. The plaintiff's twelfth exception is to that part of paragraph eleven following that part of the same paragraph referred to in plaintiff's eleventh exception and reads as follows: "I recall no evidence to the effect that he told her they were irrevocable, but all the discussion between them would indicate that she so desired them." The plaintiff contends that there is "no evidence that supports this finding."

The first part of the above statement, "I recall no evidence to the effect that he told her they were irrevocable," is not a finding of fact, and so we pass over this statement. _Raithel et ux._ v. _Hall,_ 99 Vt. 65, at pages 72 and 73, 130 Atl. 749.

The expression "but all the discussion between them would indicate that she so desired them" (to be irrevocable) is contained in the second sentence following the finding that "these two declarations of trust of real estate, at the time respectively executed, carried out the then desires of the plaintiff." Here the chancellor has found positively that the plaintiff desired to establish irrevocable trusts at the time she executed the instruments in question. The statement "but all the discussion between them would indicate that she so desired them" is a finding as to sufficiency of evidence supporting the finding set forth in the second preceding sentence of the same paragraph, namely, "These two declarations of trust of real estate, at the time respectively executed, carried out the then desires of the plaintiff." Evidence on this matter was conflicting. Hence its weight

was for the chancellor, and there being evidence fairly tending to support it, the finding stands. *McClary* v. *Hubbard,* 97 Vt. 222, at pages 235, 238-240, 122 Atl. 469.

XIII. and XIV. The plaintiff's thirteenth exception is to that part of the eleventh paragraph of the findings reading as follows: "The plaintiff now claims that Isham deceived her in this regard, but I find to the contrary," and the fourteenth exception is to that part of the eleventh paragraph reading as follows: "Isham throughout acted as a true friend of the plaintiff and was loyal to the memory of his old friend, General Peck."

What we have previously stated herein as to the plaintiff's desires and wishes at the time of the execution of the instruments here in question, coupled with the fact that "these trust agreements were of no benefit to Isham except that they relieved him of the burden of caring for her real estate," furnishes at least some basis for both of these findings. While on these points the evidence is conflicting, the weight of the evidence is for the chancellor, and the findings as made, being supported by competent evidence, will not be disturbed. *McClary* v. *Hubbard,* 97 Vt. 222, at pages 238, 239, and 240, 122 Atl. 469.

XV. The plaintiff's fifteenth exception is general, taken to the findings of fact as a whole because "they contain as component integral parts thereof the matters hereinbefore specifically excepted to by the plaintiff." What we have stated in disposing of the foregoing exceptions makes further comment on this exception unnecessary.

XVI. The plaintiff's sixteenth exception is taken to the chancellor's failure to find, as requested by the plaintiff, that before executing the trust agreement and deeds the plaintiff had never seen a deed; did not know what a deed was; and at the time did not know that she executed any deeds.

The time when the plaintiff executed the first deed in question here was several months prior to the time when she executed the second deed. It necessarily follows that when she executed the second deed she had seen at least one deed, so that the finding as requested was properly refused. Refusal of the requested finding in part unsound is not error. *McClary* v. *Hubbard, supra.*

XVII. The plaintiff excepted to the refusal of the chancellor to comply with plaintiff's request for a finding, "that

at the time of the execution of the deeds and trust agreements, the plaintiff understood that she could revoke the trusts at any time she might desire during her lifetime, and she relied wholly and entirely upon Mr. Isham for advice in the matter, and he, though he knew the true character of the transactions, said nothing to her about it.'' The exception is upon the ground that such finding as requested is supported by all the evidence in the case, and is not disputed by any evidence in the case.

While there is no specific finding as to the plaintiff's understanding at the time she executed the instruments in question, reference to the findings as made is here pertinent.

Before executing either of the trust agreements in question here, it appears from the findings that the plaintiff said she wanted a trust agreement to provide so that no influence on the part of her relatives or any one else would get her to change the form of investment; also that she did not want any influence of any kind in the future to induce her to change the ultimate disposition agreeable to the wishes of her father. That she desired the trusts to be irrevocable at the time she executed them is also found by the chancellor. The foregoing, taken in connection with what we have said in reference to the tenth and eleventh exceptions, and also taken in connection with the other findings as made, not only raises but appears to compel the inference that at the time the plaintiff executed the trusts here in question she understood them to be as she desired them, namely, that they were irrevocable, and she was under no misapprehension as to their legal effect.

Her primary motive in executing these trusts was to protect herself against the influence of relatives and others. To have made the trusts revocable would have destroyed the primary purpose for which she created them.

In the deeds creating the trusts, no power of revocation is reserved or contained. When the trust is not impeachable for other reasons, the lack of such a power reserved has no effect, even as evidence of a mistake, provided there appears to have been the intent to make an irrevocable gift. In this case such an intent is fully manifest upon adequate and worthy motive. *Barber, Admr.* v. *Thompson,* 49 Vt. 214, at page 227. The findings as made amount to a finding that the plaintiff at the time she executed the trusts in question not only desired them to be irrevocable but understood them to be so. Hence a specific

finding on this point is not necessary. *Hale, Cabot & Buck* v. *Windsor Savings Bank et al.*, 90 Vt. 487, at page 495, 98 Atl. 993. *Hobart's Admr.* v. *Vail*, 80 Vt. 152, at page 160, 66 Atl. 820. Refusal of the requested finding in part unsound is not error. *McClary* v. *Hubbard, supra.*

██ It remains to consider plaintiff's exception to decree dismissing the bill. The effect of the deed and declaration of trust accompanying it in each instance involved here was to create a trust in the City Trust Company and to vest in the beneficiaries named by the settlor a right of which they could not be divested without their consent. Each deed conveyed the legal title to the real estate therein described and the declaration of trust accompanying it shows the character and purpose of such deed. Each of the two transactions was a voluntary conveyance in trust, fully executed and completed, for the settlor and beneficiaries named. The findings show that these transactions are not tainted with fraud, and that each is a voluntary settlement, fully completed, fairly made, with knowledge of its effect, and no power of revocation reserved. Such a trust will not be vacated at the instance of the settlor. *Sargent* v. *Baldwin et al.*, 60 Vt. 17, 13 Atl. 854; *Barber, Admr.* v. *Thompson, supra.* Also see note, 38 A. L. R. 941; also *Wallace* v. *Industrial Trust Co. et al.*, 29 R. I. 550, 73 Atl. 25.

The plaintiff has cited several cases in her brief, but none of these apply to the case as made by the findings. In this case neither fraud nor mistake appears.

*The result is that the decree dismissing the bill is affirmed and cause remanded.*