**ARIES INFORMATION SYSTEMS,
INC., Respondent,**

v.

**PACIFIC MANAGEMENT SYSTEMS
CORPORATION, et al., Appellants.**

**No. C5–84–1301.**

Court of Appeals of Minnesota.

April 23, 1985.

Review Denied June 27, 1985.

Edward F. Fox, St. Paul, for respondent.

Richard Meshbesher, St. Louis Park, for appellants.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This is an appeal from a judgment for appellants' misappropriation of respondent's trade secret. Respondent expended time and money to develop a computer program which became successfully marketable. During their employment with respondent, appellants formed their own computer software company and solicited several of respondent's clients, attempting to sell them computer software that was nearly identical to respondent's. The trial court held respondent's computer program was a trade secret and that appellants wrongfully misappropriated it. Respondents were awarded monetary damages and injunctive relief. We affirm.

## FACTS

Respondent Aries Information Systems, Inc. (Aries), develops and markets computer software specially designed to meet the financial accounting and reporting requirements of public bodies such as school districts and county governments. One of Aries' principal products is the POBAS III accounting program.

Appellant Pacific Management Systems Corporation (Pacific) was organized in March 1980 by individual appellants Scott Dahmer, John Laugan and Roman Rowan for the purpose of marketing a financial accounting and budgeting system known as FAMIS. Individual appellant Susan English is Dahmer's wife and served as an incorporator, officer and director of Pacific.

Dahmer, Laugan and Rowan were Aries employees before, during and shortly after they organized Pacific. As employees, they each gained access to Aries' software materials (including the POBAS III system) and had information about Aries' existing and prospective clients. Proprietary notices appeared on every client contract, source code list and magnetic tape. The software user manuals of Aries were copyrighted. Each of these appellants signed an "Employee Confidential Information Agreement" after beginning employment with Aries. No special consideration was given for signing the agreements. The agreements contained an acknowledgement that all Aries' proprietary software was confidential and no confidential information could be disclosed to anyone. The agreements also restricted appellants from competing with Aries during or for a three-year period after their employment with Aries.

During the late 1960's Aries was a consultant to the Midwestern Education Information Project (MSEIP). MSEIP had federal funding under Title V, Public Law No. 89–10 to study and develop financial process software for school districts. Between 1970 and 1971, Aries implemented an experimental pilot software program. In 1972, after no more federal funds were available, Aries used the general concepts from the MSEIP study and the pilot program to develop its own system known as POBAS I. Aries spent over $100,000 for research and development. Aries successfully sold POBAS I to school districts in the Midwest and Canada. As a result of

improvements and additions, POBAS II was developed. After eight or ten years and substantial capital investment, POBAS II was transformed into POBAS III with advanced capabilities over POBAS II.

During spring of 1980, Rock County, Wisconsin, sought proposals for financial software systems. Appellant Rowan made a sales presentation for Aries to Rock County, and Aries submitted its bid in March 1980. At the same time, Dahmer, Laugan and Rowan prepared a bid by Pacific which was signed by Susan English and presented to Rock County. Pacific was awarded a contract for $61,000 in lump-sum and monthly support payments of at least $400. Appellants solicited other Aries' prospective clients in the name of Pacific while still employed by Aries.

Pacific's FAMIS software system is substantially identical to Aries' proprietary POBAS III system. The differences which do exist are superficial and do not make the FAMIS system different in form or capacity from POBAS III. Appellants failed to present any evidence or documentation at trial which showed either how they developed or acquired the FAMIS system. The POBAS III system is not available from any source but Aries.

### ISSUES

1. Is a computer program available from only one source and the subject of reasonable efforts to maintain its secrecy a trade secret?

2. Is it a misappropriation of a trade secret for employees to make use of their employer's trade secret while under a duty to the employer to maintain the secrecy of and limit the use of the trade secret?

3. Do compensatory damages, exemplary damages and injunctive relief constitute an appropriate award in a trade secret case?

### ANALYSIS

1. *Trade Secret.*

The definition of a trade secret is set forth in the Minnesota Trade Secrets Act:

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Minn.Stat. § 325C.01, subd. 5 (1984).

■ Aries' POBAS III system is a trade secret. The system derived independent economic value from being generally unknown and available solely from Aries. The economic value is evidenced by the $2 million generated by Aries from the sale of POBAS III between 1979 and 1983.

■ Aries can assert POBAS III was a trade secret only if they made reasonable efforts to maintain the secrecy of POBAS III. The law requires more than mere intent to keep it secret yet does not require absolute secrecy if the circumstances do not demand it. *Electro-Craft Corporation v. Controlled Motion, Inc.*, 332 N.W.2d 890, 901 (Minn.1983). The possessor of a trade secret is not required to guard against unanticipated, undetectable or unpreventable methods of discovery. *E.I. duPont deNemours & Company, Inc. v. Christopher*, 431 F.2d 1012, 1016 (5th Cir. 1970), *cert. denied*, 400 U.S. 1024, 91 S.Ct. 581, 27 L.Ed.2d 637 (1971).

Aries took reasonable efforts to maintain the secrecy of POBAS III. The efforts constituted more than mere intent: (a) all of the source code listings and magnetic tapes incorporating the POBAS system bore proprietary notices; (b) the Aries user manuals were copyrighted and stated that all system information was proprietary; and (c) every client contract stated that POBAS was the exclusive proprietary property of Aries. Although absolute security was not achieved, Aries took reasonable

efforts to protect the secrecy of POBAS III from third parties.

■ Aries' greatest exposure arose from its own employees. It is difficult, if not impossible, to prevent an employee from discovering his employer's trade secrets. Aries took reasonable steps to maintain the secrecy of POBAS III by having Dahmer, Laugan and Rowan sign confidentiality agreements. Although appellants assert that the agreements were invalid for lack of separate consideration, the contention is meritless. It is a valid employment requirement. The agreements, which were read and signed, communicated to appellants that all Aries' information was confidential.

### 2. *Misappropriation.*

"Misappropriation" means: * * * disclosure or use of a trade secret of another without express or implied consent of a person who * * * at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was * * * acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use * * *.

Minn.Stat. § 325C.01, subd. 3(B)(II) (1984).

■ Appellants made use of the POBAS III trade secret without any express or implied consent from Aries. At the time appellants made use of the trade secret, they were still employed by Aries. By reading and signing the confidentiality agreements, appellants knew they were under a duty to maintain the secrecy and limit the use of all Aries' information. A duty of employer/employee confidentiality can arise at common law if the employee is given notice of what material is to be kept confidential. *Josten's, Inc. v. National Computer Systems, Inc.*, 318 N.W.2d 691, 702 (Minn.1982). The duty existed because the confidentiality agreements, whether supported by consideration or not, put appellants on notice that all Aries' information was confidential.

Appellants' misappropriation is further demonstrated by (a) there were no material differences between Pacific's FAMIS system and Aries' POBAS III system; (b) Pacific failed to show how they developed or acquired the FAMIS system; and (c) the POBAS III system was not available from any source but Aries.

### 3. *Damages.*

■ A complainant may recover the actual loss caused by the misappropriation in addition to the unjust enrichment enjoyed by the wrongdoer. Minn.Stat. § 325C.03 (1984). The trial court based the compensatory damages on the revenues gained by Pacific during the period of misappropriation and on the revenues which Aries lost because its clients were diverted to Pacific. A 33 percent industry standard royalty fee was also assessed to Pacific because the royalties would have gone to Aries but for the misappropriation. The trial court found that appellants' conduct was willful and malicious and properly awarded punitive damages and attorney's fees as permitted under Minn.Stat. § 325C.03–.04 (1984).

### DECISION

The trial court's ruling that appellants wrongfully misappropriated respondent's trade secret was proper. The trial court's awards were correct. Permanent injunctive relief to Aries under Minn.Stat. § 325C.03 (1984) was proper.

Affirmed.