# Omega Optical, Inc. v. Chroma Technology Corporation, Richard Stewart, et al.

[800 A.2d 1064]

No. 99-566

Present: Dooley, Morse, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed April 12, 2002
Motion for Reargument Denied May 10, 2002

Bernard D. Lambek and Patricia K. Turley of Zalinger Cameron & Lambek, P.C., Montpelier, and R. Mark Halligan, Philip D.

12

*Segrest, Jr.* and *Steven E. Feldman* of *Welsh & Katz, Ltd.*, Chicago, Illinois, for Plaintiff-Appellant.

*Craig Weatherly* of *Gravel & Shea*, Burlington, *Richard H. Munzing* of *Weber, Perra & Munzing, P.C.*, Brattleboro, and *Heidi E. Harvey, Blair L. Perry, Jolynn M. Lussier* and *Michael E. Zelinger* of *Fish & Richardson P.C.*, Boston, Massachusetts, for Defendants-Appellees.

**Morse, J.** Omega Optical appeals from a judgment of the superior court in favor of defendant Chroma Technology Corporation and several other named defendants in Omega's action for trade secret misappropriation, conversion, breach of loyalty, tortious interference with business relations, unfair competition, conspiracy and breach of contract. Omega argues on appeal: (1) the court erred in its determination of the proof necessary to demonstrate trade secret misappropriation, and it is entitled to judgment as a matter of law on that claim; (2) the court similarly erred on each of its remaining claims, with the exception of its claims for breach of contract and conversion, and it is entitled to judgment in its favor on each of the claims; (3) the court erroneously determined that Omega's proof of damages was not sufficiently definite so as to allow for an award without resorting to speculation or conjecture; (4) Omega is entitled to an award of punitive damages as a matter of law; and, finally, (5) the court failed to make adequate findings regarding its crediting of the individual defendants' testimony in light of Omega's theory and requested findings that a joint defense agreement undermined the credibility of that testimony. We affirm.

This case arises out of events spanning several months starting in early 1991, in which a number of Omega Optical employees left the company and went into business together under the name of Chroma Technology Corporation. Chroma began making thin-film optical interference filters used in fluorescence microscopy, a product that Omega had developed and also produces. On October 1, 1996, Omega brought suit against Chroma and ten of its employees. Following a twenty-two-day bench trial, the trial court issued a 111-page decision finding in favor of defendants on all of Omega's claims.

Omega's appeal centers on its argument that, because defendants acquired substantial amounts of information that the court found was "protectible as a trade secret," it is entitled to judgment as a matter of law, notwithstanding the trial court's extensive findings that Omega failed to take reasonable steps to protect the information. The court

concluded under the evidence that defendants owed no duty of confidentiality with regard to the information.

As a preliminary matter, and as Omega points out, because the operative facts of this case occurred before July 1, 1996, the effective date of the Vermont Trade Secrets Act, the common law predating the act applies to this case. See 9 V.S.A. § 4609 (providing the VTSA does not apply to misappropriation occurring before its effective date); see also *McClary v. Hubbard*, 97 Vt. 222, 229, 122 A. 469, 473 (1923) (recognizing right of action for misappropriation of a trade secret). But as the trial court noted, the act and the Restatement (Third) of Unfair Competition provide guidance with regard to Omega's common law claim for misappropriation of trade secrets.

▮▮▮▮ In general, liability for trade secret misappropriation in the employment context requires proof of both the existence of a trade secret as well as unauthorized disclosure or use of the secret in breach of a duty of confidence. *Aries Info. Sys., Inc. v. Pacific Mgmt. Sys. Corp.*, 366 N.W.2d 366, 368 (Minn. Ct. App. 1985); Restatement (Third) of Unfair Competition §§ 40, 42 (1995). Employees, whether current or former, have a duty not to use or disclose confidential information imparted to them by their employer. Restatement (Second) of Agency § 396(b) (1958); see also Restatement (Third) of Unfair Competition § 42 cmt. b (former employee's duty of loyalty includes duty not to disclose employer's confidential information to others). The former employee's duty of confidence attaches to any information the employee knows or has reason to know is confidential. Restatement (Third) of Unfair Competition § 42 cmt. c; see also *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991) (employer must take appropriate precautions to alert employee of need to maintain confidentiality of information subject to trade secret protection); *Mercer v. C.A. Roberts Co.*, 570 F.2d 1232, 1238 (5th Cir. 1978) (agreement to keep employer's confidences implied where employee knows or should know based on particular circumstances that employer desired information to remain secret); *Aries Info. Sys.*, 366 N.W.2d at 369 ("A duty of employer/employee confidentiality can arise at common law if the employee is given notice of what material is to be kept confidential."); *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 903 (Minn. 1983) ("[A] common law duty of confidentiality arises out of the employer-employee relationship only as to information which the employer has treated as secret."). Whether an employee knows or should know certain information obtained from the employer is confidential can be implied from the totality of the

14

circumstances; no explicit notice to the employee is necessarily required. *In re Innovative Constr. Sys., Inc.*, 793 F.2d 875, 883 (7th Cir. 1986); *Standard Brands, Inc. v. Zumpe*, 264 F. Supp. 254, 262 (E.D. La. 1967); *Sun Dial Corp. v. Rideout*, 102 A.2d 90, 96 (N.J. Super. Ct. App. Div. 1954); see also Restatement (Third) of Unfair Competition § 42 cmt. c ("If an employer establishes ownership of a trade secret *and* circumstances sufficient to put the employee on notice that the information is confidential, the employment relationship will ordinarily justify the recognition of a duty of confidence.") (emphasis added). It is a fact-specific inquiry.

 Omega argues, however, that employees who acquire valuable information in the course of their employment owe a duty of confidentiality to the employer merely by virtue of their status as employees, regardless of whether the employer has done anything either to protect the information or to communicate to the employees the confidential and proprietary nature of the information. This argument is simply at odds with the case law, which requires something more than the mere employer-employee relationship to establish a duty of confidentiality. See, e.g., *Mercer*, 570 F.2d at 1238 (noting "not all employment relationships are confidential," and determining that, although employee acquired intimate knowledge of his employer's operations, he owed no duty of confidentiality because he had not been informed that the information was secret and under the circumstances could have reasonably assumed it was not); *Aries Info. Sys.*, 366 N.W.2d at 369; *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d at 903. As noted above, whether a duty of confidence attaches is a factual inquiry. Furthermore, our decision in *McClary v. Hubbard* makes plain that the party claiming a trade secret must demonstrate that it has taken steps to ensure the information's secrecy to prevail on a claim for trade secret misappropriation. *McClary*, 97 Vt. at 232-33, 245, 122 A. at 473, 479.

In analyzing the facts of this case, the trial court applied the Restatement's approach to Omega's claim for trade secret misappropriation. In other words, it determined that the body of knowledge necessary to produce the thin-film optical interference filters was "sufficiently valuable, and not generally well known, that it [was] protectible as a trade secret."* Consistent with *McClary*, the

---

\* Although similar, the VTSA and the Restatement take somewhat different approaches to analyzing a claim for misappropriation of trade secrets. As we noted in *Dicks v. Jensen*, 172 Vt. 43, 47, 768 A.2d 1279, 1282 (2001), the VTSA includes in its definition of

court went on, however, to conclude that Omega had failed to take measures toward protecting the information, and the circumstances under which the employees acquired the information failed to indicate to them that the information was confidential. Therefore, the defendants owed no duty of confidentiality to Omega, and their use of the valuable information in their new venture did not constitute misappropriation of that information.

Specifically with respect to the circumstances under which the defendants acquired the information, the trial court found that while defendants were employed at Omega, the company had "no internal policies concerning confidentiality, nondisclosure or noncompetition." The court found that an open atmosphere prevailed in which employees were encouraged to share information about the development and production of filters. In contrast, during this same time, the company *did* have confidentiality policies with regard to proprietary information belonging to Omega's *customers*. The court found that Omega failed to convey during the defendants' course of employment the confidential nature of the information it now seeks to protect and, when Omega did institute a policy of confidentiality, the defendants still employed with the company refused to sign onto it and resigned. The court also found that Omega had few security measures in place prior to defendants leaving the company and the few security measures that did exist, such as signing out keys, were not enforced or even monitored. For a significant period of time, members of the public had access to work areas. The court also noted that many of the measures cited by Omega as security measures in the course of the trial actually evolved for different purposes and Omega's claims, such as its location as a security measure, were post hoc rationalizations.

These findings are supported by the record. For instance, Robert Johnson, Omega's founder, testified the company had *no* lock on the door of its first facility, and at the next facility, the doors connecting

---

"trade secret" a requirement that the information be the subject of reasonable efforts to maintain its secrecy. 9 V.S.A. § 4601(3)(B). If such efforts have not been made, the information is not a "trade secret." On the other hand, the Restatement's definition does not incorporate such a requirement. Restatement (Third) of Unfair Competition § 39. Rather, its definition merely parallels the first part of our statutory definition. Compare *id.*, with 9 V.S.A. § 4601(3)(A). Under the Restatement, information is a "trade secret" if it is used and valued in the operation of a business and is sufficiently secret, i.e., not generally well known, that it affords economic advantage to the business. Restatement (Third) of Unfair Competition § 39. Notably, the "secret" element of the Restatement definition addresses itself only to the question of whether the information bestows any competitive advantage on the employer.

Omega to other businesses were not locked. He testified that Omega avoided traditional security measures, and that the company was relying on the fact that its employees were "intelligent people" who would intuit that the information they worked with should be kept confidential. He also testified that he expected employees to know that information acquired in the course of their employment was proprietary and confidential simply based on the nature of the information. He indicated that Omega did not mark any of its own documents "confidential" because it would have undercut the fact that *all* documents at Omega were confidential. Cf. *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 260 N.E.2d 723, 730 (Mass. 1970) (concluding that employer's claimed security measure of doing nothing in order not to "excite undue interest" in information was likely only an afterthought and was "at variance with the rule that individuals must be constantly admonished that a process is secret and must be kept so").

There was also testimony and other documentary evidence that (1) Omega had no written policy of confidentiality; (2) just prior to the time defendants were contemplating leaving Omega, the company recognized the need to establish guidelines to help employees distinguish between confidential and nonconfidential information; (3) very little awareness existed among employees as to what the company considered proprietary; and (4) record keeping at Omega was sloppy, in some cases nonexistent, and the company's technical information was not kept in an organized or centralized, controlled manner. In one instance, defendant Kebbel testified that after Omega donated one of its computers to a local daycare center, Dr. Johnson asked Kebbel if the company still had the computer because it contained information that Dr. Johnson needed. In light of this and other evidence available to the trial court, we find no error in the court's finding that Omega failed to take steps to put its employees on explicit or implicit notice that certain information conveyed to them during their employment was to be kept confidential. Hence, defendants did not receive the information in confidence and, therefore, did not breach their duty of confidence to Omega, their former employer.

Omega argues, however, that the court erred by examining the circumstances surrounding the *acquisition* of the information when determining whether the defendants owed a duty of confidentiality. Omega contends that it is the time of *use* that is determinative

regarding whether former employees owe a duty of confidentiality to a former employer. Omega confuses the relevant times for determining whether a duty exists and whether the duty has been breached, that is, whether the information has been misused or misappropriated. To determine whether a duty of confidentiality arises, courts examine whether the information was acquired under circumstances that would indicate to an individual that the information is confidential, while courts look to the time of use to determine whether the individual knows that the information being used is subject to a duty of confidentiality such that the use constitutes a breach of that duty and, thus, misappropriation. Compare Restatement (Third) of Unfair Competition § 41(b)(1) (noting person owes other party a duty of confidentiality with respect to a trade secret if the trade secret was disclosed to that person under circumstances that would justify the conclusion that, "*at the time of the disclosure,* the person knew or had reason to know that the disclosure *was intended to be in confidence*") (emphasis added), with *id.* § 40(b)(1) (stating that individual is liable for appropriation of a trade secret if, among other things, "the actor uses or discloses the other's trade secret without the other's consent and, *at the time of the use or disclosure,* the actor *knows* or *has reason to know* that the information is a trade secret that the actor *acquired under circumstances creating a duty of confidence* owed by the actor to the other") (emphasis added); see also *Electro-Craft Corp.*, 332 N.W.2d at 901 ("Trade secret protection ... depends upon *a continuing course of conduct* by the employer, a course of conduct which creates a confidential relationship.") (emphasis added).

■ The trial court's findings are supported by the record, and the trial court correctly applied the governing law. Consequently, we discern no error in the trial court's judgment on the claim for trade secret misappropriation that would require either reversal or entry of judgment in Omega's favor. See *Highgate Assocs. v. Merryfield,* 157 Vt. 313, 315-16, 597 A.2d 1280, 1281-82 (1991) ("Where the trial court has applied the proper legal standard, we will uphold its conclusions of law if reasonably supported by its findings.").

On its related claims of breach of loyalty, tortious interference with business relations, unfair competition and conspiracy, Omega asserts that the trial court made errors of law that not only require de novo review, but that, once remedied, entitle Omega to judgment in its favor on each of the claims. As we noted in *Dicks v. Jensen,* the Vermont Trade Secrets Act explicitly supplants common law tort claims that provide civil remedies for the misappropriation of trade secrets. 172

Vt. at 51, 768 A.2d at 1285; see also 9 V.S.A. § 4607. Therefore, if the VTSA governed this case, arguably at least some of Omega's claims would be eliminated. As noted above, however, the acts in question in this case took place before the effective date of the VTSA, and therefore the common law still governs.

With regard to its assertion that the trial court's decision on each of these claims should be reviewed de novo, Omega fails to point to any individual error of law by the trial court on any of the claims and instead reargues the evidence before the trial court on each claim, cataloguing the evidence in its favor. The standard of review in such circumstances is a determination whether the court's findings of fact are supported by the record and whether those findings reasonably support its conclusions. *Highgate*, 157 Vt. at 315-16, 597 A.2d at 1281-82. In making that determination, we disregard any mitigating evidence and view the record in the light most favorable to the trial court's findings. *Id.* at 315, 597 A.2d at 1281 ("A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding.").

To the degree that the additional claims are premised on Omega's claim that defendants misappropriated Omega's trade secrets, the trial court's disposition of that claim also disposes of the additional claims. Furthermore, as the trial court noted with regard to Omega's breach of loyalty claim, courts have generally held that at-will employees may plan to compete with their employer even while still employed there and may freely compete with the employer once they are no longer employed there. See *Augat, Inc. v. Aegis, Inc.*, 565 N.E.2d 415, 419 (Mass. 1991); *Metal Lubricants Co. v. Engineered Lubricants Co.*, 411 F.2d 426, 429-30 (8th Cir. 1969) (noting that employees may plan to compete with their employer while still in its employ, and "absent [a] covenant not to compete or breach of a confidential relationship, an employee is free to leave his employment and enter into competition with his former employer"). This behavior does not constitute a breach of a duty of loyalty. Such at-will employees are restricted, however, from misappropriating trade secrets and soliciting customers for their new venture while still employed at the former employer. See *Augat*, 565 N.E.2d at 419 (noting that an at-will employee may plan to go into competition with his or her employer while still employed, but that the employee may not solicit the employer's customers while *still* employed there and may not appropriate the employer's trade secrets or other *confidential*

information). The trial court specifically found that, while defendants did formulate plans for the creation of Chroma while still working at Omega, they did not solicit Omega's customers while still employed there and continued to perform their duties at Omega in good faith. As these findings are supported by the record, we will not disturb them on appeal.

Omega argues, however, that competition for Omega customers by defendants *following* their departure from the company constitutes a breach of the duty of loyalty as a matter of law. But as we noted with respect to customer lists in *Dicks*, when an employer does not take steps to protect information such as customer lists, competition for those customers by a former employee *after* that employee has left the company is legitimate. *Dicks*, 172 Vt. at 50, 768 A.2d at 1285.

Omega also makes a more general argument that "[a]s *former* employees of Omega, the individual defendants each ... *continued to owe* Omega a duty of loyalty, which included the duty to *refrain from acting for their own benefit or the benefit of Chroma* to the detriment of Omega." (Emphasis added.) Omega cites no authority for the proposition that at-will employees continue to owe a duty of loyalty to a former employer, even after they have left that employment, that constrains them from ever acting to the detriment of that employer. Such a common law duty would prevent an employee from ever going to work for a competitor even in the absence of an agreement not to do so, an anomalous result. Cf. *Dicks*, 172 Vt. at 51, 768 A.2d at 1285 (given restraint with which this Court enforces explicit noncompete agreements, we declined to imply one).

On Omega's claim for tortious interference with business relations, the trial court concluded that, although defendants may have used aggressive sales techniques, Omega failed to demonstrate that the defendants acted with the sole purpose of harming Omega, used improper means in competing with Omega for customers, or used criminal or fraudulent means to advance their own competitive interests. See *Gifford v. Sun Data, Inc.*, 165 Vt. 611, 613, 686 A.2d 472, 474-75 (1996) (mem.) (noting proof necessary to prevail on claim for tortious interference with prospective contractual relations and stating "[c]ompetitive business practices are not tortious"). The trial court also concluded that Omega had failed to establish a causal connection between any of defendants' practices and a loss of business at Omega. Although Omega cites to evidence it argues demonstrates that defendants used improper means in competing for customers, its brief

fails to address the trial court's conclusion that it failed in its proof on the causal element of the tort. Accordingly, we will not reverse the trial court on this claim.

Omega also claims that the trial court ignored its evidence of customer confusion with regard to its claim of unfair competition, citing a single incident in which a representative of a company that distributes microscopes indicated that he thought Omega was a trade name for Chroma's product, leading him to contact Chroma when he meant to contact Omega about ordering a filter set. Omega points out the trial court failed to address its proposed findings regarding this incident and its proposed finding regarding Chroma's failure to dispel the representative's confusion about the companies. The trial court, however, explicitly acknowledged that "[s]ome confusion [of the companies] was inevitable" given that both manufactured the same product and were located in Brattleboro. It went on to conclude, though, that defendants had not acted with a conscious object of fostering confusion, the names of the two companies were not so similar as to inevitably lead to customer confusion and Omega had failed to establish the existence of "any significant level of confusion" among the companies' customers. Omega's citation to evidence of the isolated incident above does not undermine these conclusions.

Omega's argument that it is entitled to judgment on its conspiracy claim rests on its argument that the defendants acted in concert in engaging in the behavior giving rise to its other claims, including that for trade secret misappropriation. As these other claims are without merit, so is its claim for conspiracy. In sum, we decline Omega's invitation to reverse the trial court's judgment on each of the claims for breach of loyalty, tortious interference with business relations, unfair competition and conspiracy, and enter judgment in its favor.

Because of our disposition, we need not address Omega's arguments on the damages issues. Finally, with respect to Omega's argument that the trial court failed to make adequate findings on the credibility of each of the individual defendants and erred by failing to adopt instead Omega's proposed findings on the issue of their credibility, we discern no reversible error. Determinations of credibility are solely the province of the factfinder, *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) (noting it is the province of the trial court to make determinations of witness credibility); *Mullin v. Phelps*, 162 Vt. 250, 261, 647 A.2d 714, 720 (1994) (noting that in reviewing findings by a

trial court, this Court is not to "reweigh evidence or . . . make findings of credibility de novo"), and the failure to adopt a party's proposed findings on the issue of witness credibility is not grounds for reversal. See *McCormick v. McCormick*, 150 Vt. 431, 435, 553 A.2d 1098, 1101 (1988) (noting that failure of court to adopt party's proposed findings is not cause for reversal because court is free to choose the evidence it finds persuasive). Furthermore, the trial court is not obligated to explain to a party why it is not adopting the party's proposed findings. Thus, the trial court's failure to adopt Omega's theory that defendants' joint defense agreement rendered their testimony not worthy of belief or to explain why the joint defense agreement did not undermine their credibility does not constitute grounds for reversal.

*Affirmed.*