*St. Pierre v. McAllister*, 2-1-21 Frcv (Mello, J., Jan. 26, 2021)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Franklin Unit | CIVIL DIVISION<br>Docket No. 2-1-21 Frcv |

| | |
|---|---|
| MARK ST. PIERRE and AMANDA ST. PIERRE, Individually and d/b/a PLEASANT VALLEY FUELS, LLC and D & O OIL, INC.,<br>    Plaintiffs,<br><br>v.<br><br>ROBERT MCALLISTER and FRED'S PLUMBING AND HEATING, INC. d/b/a FRED'S ENERGY,<br>    Defendants. | |

## RULING ON PENDING MOTIONS

This is a suit to enjoin the Defendants from continuing to sell fuel oil to customers within a 40-mile radius of the offices of Pleasant Valley Fuels, LLC in Berkshire, Vermont. Plaintiffs contend that the Defendants must be enjoined because their sale of fuel oil within the restricted area violates both a covenant not to compete and the Vermont Trade Secrets Act and, if continued, will cause Plaintiffs irreparable harm. On January 8, 2021, this court issued an ex parte "Order to Show Cause and Temporary Restraining Order" ("TRO"), and on January 19, 2021, the court held a two-hour evidentiary hearing on the Plaintiffs' motion to convert the TRO into a preliminary injunction.[1] Defendants oppose the motion and move to vacate the TRO and dismiss the Complaint.

### Findings of Fact

Around 2009, Defendant Robert McAllister started a fuel oil business in his hometown of Richford, Vermont, and over the ensuing eight years he built up a substantial number of customers in Franklin County. He operated his business through a corporation named McAllister Fuels, Inc.

---

[1] At the conclusion of the evidentiary hearing, the court orally ordered that the TRO will remain in effect pending a ruling on Plaintiffs' motion for a preliminary injunction. To protect those members of the public who need fuel oil in the meantime, however, the court added that it would not violate the TRO for either party to fill the order of any customer who requests a fuel delivery.

On February 12, 2017, McAllister signed a Purchase and Sale Agreement agreeing to sell the assets of McAllister Fuels, Inc. to Plaintiffs Mark and Amanda St. Pierre for $220,000 payable over time (Exhibit 3A).[2] That same day the parties signed an Employment Contract, in which the St. Pierres agreed to employ McAllister as their fuel manager (Exhibit 3B). On June 1, 2017, the date of the closing on the sale, the parties signed an agreement allocating $60,000 of the purchase price to "Customer List and Trade Name" and $60,000 to "Covenant Not to Compete" (Exhibit 3C).

The Employment Contract McAllister signed contained the following provision:

> Robert McAllister agrees to a non-compete clause for the duration of the note that Mark and Amanda St. Pierre owe on the balance for McAllister Fuels Inc. This specifically means if Robert McAllister leaves the employment of Mark and Amanda St. Pierre prior to the 7 year term of the note, he cannot work for in any position another fuel company within a 40 mile radius of our customer base.

(Exhibit 3B).[3] The term "customer base" is not defined in the contract.

Three-and-a-half years later, the St. Pierres informed McAllister that they wanted to sell their fuel oil business. McAllister was not happy about this because he had created the business, it was the only business he knew, and he had hoped to remain employed in the business for many more years. Nevertheless, he suggested that the St. Pierres might want to speak to the Defendant Fred's Plumbing & Heating, Inc. d/b/a Fred's Energy, which was looking to expand its operations into the area.

The St. Pierres did approach Fred's Energy, and on August 31, 2020, Scott Oeschger, Vice-President of Fred's Energy, signed a document entitled "Confidential and Private Information," which stated:

> This information is being shared as part of a potential purchase and sale agreement of Pleasant Valley Fuels, LLC dba McAllister Fuels. We understand that reproduction and further disclosure to third parties; other than legal and accounting representatives, of this

---

[2] McAlister subsequently agreed to reduce the purchase price to $210,000 in return for the St. Pierres' promise to pay the purchase price sooner than called for in the original agreement.

[3] No 7-year note was offered into evidence at the hearing in this matter, although Amanda St. Pierre testified that one had been signed. The agreements that were introduced into evidence called for the purchase price to be paid by March 1, 2021 (*see* Exhibit 3D), not within 7 years, and it is undisputed that the purchase price was paid in full the week of November 10, 2020.

material is not permissible without express permission given by owners Mark and Amanda St. Pierre.

(Exhibit 3E).  The document does not state what "information" or "materials" were turned over to Fred's Energy by the St. Pierres.[4]  In any event, nothing came of those discussions, so the St. Pierres approached another potential purchaser, namely, Plaintiff D & D Oil, Inc. d/b/a Blouin Bros. Oil.

In the fall of 2020, the St. Pierres had a lengthy meeting with Dan Carswell, owner of D & D Oil, Inc., to discuss a potential sale of their fuel oil business to D & D Oil, Inc.  McAllister attended the meeting.  When asked about his plans if the business were sold, McAllister replied that he "would look out for himself" and that it was "time to decide what was best for himself."  He also said, "I won't do anything to undermine the smooth transition of this sale."

In October of 2020, Carswell and the St. Pierres signed a Purchase and Sale Agreement (Exhibit 3F).  The document recited that it was an "agreement … between **Pleasant Valley Fuels, LLC** … which owns and operates a business formerly known as McAllister Fuels, Inc. … (hereinafter referred to as 'Seller') and **D & D Oil, INC.**… (hereinafter referred to as 'Purchaser')" (Id. at 1).  The assets to be sold were described generally as "all of the Seller's right, title and interest in all of the assets of McAllister Fuels, tangible and intangible, of every kind and nature and description," except for assets used in certain "agricultural operations" (Id.).  Specifically included were "Seller's current commercial list consisting of approximately 975 residential and commercial customers as set forth and listed in the account summary document attached hereto as Schedule A" and "Seller's goodwill as a growing concern and the right to use the name McAllister Fuels and any derivation or modification thereof" (Id.).  As part of the Purchase and Sale Agreement, the St. Pierres and their children agreed not to compete with D & D Oil, Inc. for a period of five years (Id. at 5).

In the Purchase and Sale Agreement, D & D Oil, Inc. agreed to pay Pleasant Valley Fuels, LLC $525,000 for the assets of McAllister Fuels (Id. at 1-2).  The agreement allocated $420,000 of the purchase price to "Goodwill and Customer List" and $50,000 to the St. Pierres' "Covenant not to compete" (Id. at 2).  Nowhere in the agreement, however, was there any reference to the Employment Contract or "non-compete clause" that McAllister had signed in February of 2017, nor was any part of the purchase price allocated to it.

---

[4] Amanda St. Pierre and Scott Oeschger both testified at the evidentiary hearing.  Oeschger testified that Fred's Energy never received a customer list from the St. Pierres.  Ms. St. Pierre testified that she and her husband had 900-1,000 fuel oil customers at that time they spoke with Fred's Energy, that they "had most of Richford locked up," and that their customers' names were not provided to Fred's Energy.

3

After signing the Purchase and Sale Agreement, Carswell offered McAllister a position with D & D Oil, Inc. McAllister declined the offer. Carswell and the St. Pierres did not request or receive from McAllister any written covenant or agreement not to compete with D & D Oil, Inc., nor did Carswell or the St. Pierres ever request or receive McAllister's consent to any assignment to D & D Oil, Inc. of his "non-compete clause" with the St. Pierres.

The closing on Pleasant Valley Fuels, LLC's sale of assets to D & D Oil, Inc. took place on November 13, 2020. There is no evidence that McAllister did anything to interfere with the closing.

From January of 2017 through November of 2020, McAllister had received $222,800 from Pleasant Valley Fuels, LLC in compensation for his services as the St. Pierres' fuel manager (Exhibit 4). That compensation was separate from the $221,000 he received from the sale of his fuel oil business to the St. Pierres in 2017.

As the St. Pierres' fuel manager from 2017 to 2020, McAllister had managed all aspects of their fuel business, but he had not had access to their master customer list, although he undoubtedly knew who many if not most of their customers were, by virtue of his having managed the business since founding it in 2009. During his employment with the St. Pierres, McAllister did not have access to the passcode needed to access their master customer list, and the St. Pierres changed the passcode to his computer on November 13, 2020, the day they closed on their sale to D & D Oil, Inc.[5]

The week following the closing, Plaintiffs discovered that McAllister had gone to work selling fuel oil for Fred's Energy in direct competition with D & D Oil, Inc. The St. Pierres complained about McAllister's decision to go to work for a competitor, claiming that he was "violating the 7 year non-compete contract you signed with us in February of 2017," among other things (Exhibit 3G). McAllister denied that he was violating any agreement.

As an employee of Fred's Energy, McAllister has been competing with D & D Oil, Inc. continuously since it acquired the assets of Pleasant Valley Fuels, LLC on November 13, 2020, and he intends to continue to do so in the future. On January 7, 2021, Fred's Energy published a classified advertisement in the *County Courier* newspaper saying: "We're proud to announce that Robert McAllister has joined our company as **Fuel Manager – Richford,** delivering oil throughout Franklin County…." (Exhibit 1).

---

[5] The St. Pierres' master customer list was maintained on other computers in the Pleasant Valley Fuels office, for which McAllister did not have a passcode. While those computers apparently were never turned off, there is no evidence that McAllister ever used them to obtain a copy of the Plaintiffs' customer lists.

D & D Oil, Inc. has lost a number of customers since the closing on its purchase of the assets of Pleasant Valley Fuels, LLC. For example, since the closing 27 of Pleasant Valley's customers who receive fuel assistance have instructed the State of Vermont to switch their fuel assistance payments to Fred's Energy (Exhibit 2). One of those switches took place as early as November 20, 2020. D & D Oil, Inc. has lost in excess of $54,000 of revenue to date on account of customers who have switched their fuel assistance benefits to Fred's Energy. None of those customers was called to testify at the court's evidentiary hearing regarding their reasons, or the circumstances surrounding their decisions to switch their business to Fred's Energy.

Defendants' Motions to Dismiss

Both Defendants have filed motions to dismiss the Plaintiffs' Verified Complaint for failure to state a claim under V.R.C.P. 12(b)(6). McAllister contends that D &D Oil, Inc.'s claims against him must be dismissed because he had no contractual or employment relationship with D & D Oil, Inc. and "there is no basis in the Complaint for a theory of recovery … that is not based upon a contract theory" (McAllister Motion to Dismiss, 1/15/21, at 1). Fred's Energy contends that the claims asserted against it must be dismissed because "Fred's has no contractual relationship with either Plaintiff regarding the alleged covenant not to compete" and "is a stranger to the alleged covenant and not bound by it even if the Court finds the agreement is valid" (Fred's Energy Motion to Dismiss, 1/19/21, at 1-2).

When ruling on a motion to dismiss under V.R.C.P. 12(b)(6), the court must determine whether, assuming the facts alleged in the claimant's pleading are true, the allegations are sufficient to state a legal claim upon which relief may be granted. Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5 n.1, 184 Vt. 1. A motion to dismiss should not be granted unless "there exist no facts or circumstances" under which the claimant may be entitled to relief. Messier v. Bushman, 2018 VT 93, ¶ 9, 197 Vt. 882 (citation omitted). "The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." Powers v. Office of Child Support, 173 Vt. 390, 395 (202) (citations omitted).

The motions to dismiss must be denied essentially for two reasons. First, the Plaintiffs do allege to have contractual relationships with the Defendants. Plaintiffs allege, for example, that the St. Pierres assigned McAllister's covenant not to compete to D & D Oil, Inc., when they sold the assets of their fuel oil business to D & D Oil, Inc. and that D & D Oil, Inc. is therefore entitled to enforce the covenant. In addition, the St. Pierres allege that Fred's Energy signed an agreement not to disclose their confidential information to others without their consent and violated that agreement by using that information to compete against

5

them. On a motion under Rule 12(b)(6), the court must assume that these allegations are true.

Second, the Plaintiffs assert a number of non-contract theories of liability in their Verified Complaint, including theories of breach of the covenant of good faith and fair dealing, tortious interference with beneficial business relationships, unjust enrichment, estoppel and misappropriation of trade secrets. Whether the Plaintiffs will have sufficient evidence to sustain their allegations must remain to be seen. For the present, however, the Plaintiffs' allegations are sufficient to withstand a Rule 12(b)(6) motion to dismiss.

Standard for Obtaining a Preliminary Injunction

As noted earlier, Plaintiffs contend that they are entitled to a preliminary injunction preventing the Defendants from continuing to sell fuel oil within a 40-mile radius of the offices of Pleasant Valley Fuels, LLC in Berkshire, Vermont, because their sale of fuel oil within the restricted area violates both McAllister's covenant not to compete and the Vermont Trade Secrets Act and, if continued, would cause the Plaintiffs irreparable harm. Defendants deny the claim and move to vacate the TRO.

The "main factors" to be considered on a motion for a preliminary injunction are: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." Taylor v. Town of Cabot, 2017 VT 92, ¶ 19, 205 Vt. 586. "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Clouncil, Inc., 555 U.S. 7, 24 (2008). "The movant bears the burden of establishing that the relevant factors call for imposition of a preliminary injunction." Id. at 20.

For reasons that will be further explained below, the court concludes that the Plaintiffs have failed to meet their burden of establishing that they are likely to prevail on the merits of their breach of covenant and Violation of Trade Secrets Act claims. Moreover, any benefit Plaintiffs would obtain from a preliminary injunction would be outweighed by the potential harm to McAllister and to the public interest in having free competition in the sale of fuel oil in Franklin County this winter.

Plaintiffs' Claim Under McAllister's "Non-Compete Clause"

Plaintiffs contend that "McAllister by becoming employed by Defendant Fred's Plumbing and Heating, Inc., within the seven (7) year term of [his non-compete] Agreement and actively soliciting customers he formerly serviced prior to the sale of McAllister Fuels Inc., is in clear breach of the Covenant Not to Compete" (Verified Complaint, ¶ 59). In addition, Plaintiffs contend that, by employing McAllister to sell fuel oil within the restricted area, despite knowing about his

covenant not to compete, Fred's Energy is aiding and abetting McAllister in his breach of the covenant.

Defendants argue that McAllister's non-compete agreement is unenforceable and void because the St. Pierres are no longer in the business of selling fuel oil and have no economic interest to protect, enforcing the covenant would deprive McAllister of his principal source of income and his only marketable skill, the attempted conveyance of the covenant to D & D Oil, Inc. is void as against public policy, the wording of the covenant is unclear and confusing, the restrictions purportedly imposed by the covenant are overly broad in scope, duration and geographical range, the obligations purported imposed by the covenant were never triggered because McAllister did not voluntarily leave the employment of the St. Pierres, and the covenant expired when the St. Pierres' paid McAllister the final installment of the purchase price, among other things.

"Restraints against competitive employment conflict with the public policy favoring the right of individuals to freely engage in desirable commercial activity." Fine Foods, Inc. v. Dahlin, 147 Vt. 599, 603 (1987) (citation and internal quotation marks omitted). Therefore, when a contract restricts an individual's ability to compete with his or her employer, the court will scrutinize the reasonableness and justification of the restriction to determine "whether it is narrowly tailored in terms of geographical, temporal, and subject matter restrictions to protect the employer's legitimate interests…" Summit 7, Inc. v. Kelly, 2005 VT 97, ¶ 8, 178 Vt. 396. A non-compete agreement "is unreasonably in restraint of trade if (a) the restraint is greater than is needed to protect the promisee's legitimate interest, or (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public." Systems & Software, Inc. v. Barnes, 2005 VT 95, ¶ 4, 178 Vt. 389. Such an agreement will not be enforced if it "is found to be contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee, with due regard being given to the subject matter of the contract and the circumstances and conditions under which it is to be performed." Vt. Elec. Supply Co. v. Andrus, 132 Vt. 195, 198 (1974).

The St. Pierres cannot use McAllister's 2017 non-compete agreement to prevent him from selling fuel oil for another employer in Franklin County today. The St. Pierrss are no longer in the fuel oil business, having sold their business to D & D Oil, Inc. in 2020. Therefore, the St. Pierres no longer have a legitimate need to preclude McAllister from engaging in that business himself on behalf of another employer. Put another way, by selling fuel oil in Franklin County for Fred's Energy, McAllister is not competing with any business owned by the St. Pierres.

Moreover, any interest that the St. Pierres might have in seeing D & D Oil, Inc. succeed, is substantially outweighed by the potential harm to McAllister and

7

the public interest. Selling fuel oil is the principal, if not only business McAllister has been engaged in for the past 11 years; that business is the main, if not sole means of support for himself and his family. Loss of the ability to engage in that business would constitute a real hardship for him. Moreover, the public in Franklin County has a significant interest in having free and open competition in the fuel oil business, especially during the winter.

Because the restrictions imposed by McAllister's non-compete agreement are greater than is needed to protect the St. Pierres' legitimate business interests, and because their enforcement would impose a real hardship on McAllister and be contrary to the interests of the public, the agreement is unreasonably in restraint of trade. Therefore, the court will not enforce it.

In addition, D & D Oil, Inc. would have no standing to enforce McAllister's non-compete agreement, even if the agreement were enforceable. The agreement was between McAllister and the St. Pierres; D & D Oil, Inc. was not a party to it. There is no language in the agreement indicating that it could be assigned to a third party, there is no reference in the agreement to the parties' successors or assigns, and there is no evidence that the St. Pierres actually assigned the agreement to D & D Oil, Inc.. Moreover, the agreement was part of McAllister's Employment Contract with the St. Pierres and, as such, it was inherently personal to those parties. Therefore, the St. Pierres could not have assigned McAllister's non-compete agreement to D & D Oil, Inc., without his ratification or consent. *See* Smith, Bell & Hauck v. Cullins, 123 Vt. 96, 101-02 (1962) (holding that a covenant not to compete contained in an employment contract could not be assigned by the employer to the purchaser of the employer's business "without the employee's consent or ratification").

There is no evidence that McAllister ever consented to an assignment of his non-compete agreement to D & D Oil, Inc., nor is there any evidence that he made any promises or assurances that would preclude him from objecting to such an assignment. In the fall of 2020, when McAllister was asked about his plans if the St. Pierres sold their business to D & D Oil, Inc., McAllister merely replied that he "would look out for himself" and that it was "time to decide what was best for himself." Neither party asked McAllister to consent to an assignment of his Employment Contract or non-complete provision to D & D Oil, Inc. Moreover, when D & D Oil, Inc. offered McAllister a position of employment, he declined it. McAllister's statement, that he would not "do anything to undermine the smooth transition of this sale" certainly could not be taken as either consent or ratification. Therefore, D & D Oil, Inc. has no right to enforce McAllister's non-compete agreement with the St. Pierres.

<u>Plaintiffs' Claim Under the Vermont Trade Secrets Act</u>

Plaintiffs contend that the Defendants acquired trade secret "information" about the Plaintiffs' customers, that Defendants "had a duty to maintain the confidentiality" of that information, and that Defendants misappropriated that trade secret information and Violated the Vermont Trade Secrets Act when they "used that information to solicit the former customers of McAllister Fuels for the purpose of expanding the customer base of Fred's Energy in Franklin County" (Verified Complaint, ¶ ¶ 76-79). Defendants deny the claim.

The Vermont Trade Secrets Act (9 V.S.A. § § 4601, et seq.) provides that "[a] court may enjoin actual or threatened misappropriation of a trade secret." Id. § 4602(a). The term "trade secret" is defined as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Id. § 4601(3). The term "misappropriation" means "disclosure or use of a trade secret of another without express or implied consent" by a person who "used improper means to acquire knowledge of the trade secret" or "knew or had reason to know that his or her knowledge of the trade secret was … acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use…." Id. § 4601(2)(B)(i) and (ii)(II).

The Vermont Supreme Court has held that "[a] customer list can be a protected trade secret," if it contains "information [having] independent economic value that is not readily ascertainable to others" and if "reasonable efforts were made to maintain the information's secrecy." Dicks v. Jensen, 172 Vt. 43, 47 (2001). The problem here, however, is that there is no evidence that either Defendant ever received or had access to the St.Pierres' customer list. To the contrary, the evidence establishes that McAllister never had access to the St. Pierres' master customer list, and the customer list was not one of the items the St. Pierres ever turned over to Fred's Energy. Therefore, the Defendant could not have misappropriated any information contained on the list.

Although McAllister never had the St. Pierres' customer list, he undoubtedly knew who many if not most of their customers were by virtue of his having managed the business since founding it in 2009. However, the St. Pierres never asked McAllister to sign a confidentiality agreement of any kind, and, for reasons already explained above, he is not subject to an

9

enforceable covenant and to compete. Moreover, there is no evidence that McAllister solicited, or attempted to solicit any of the St. Pierres' customers while still employed by them. Therefore, he is free to use the knowledge he obtained while employed in the fuel business for the past 11 years in his new employment with Fred's Energy. *See* Omega Optical, Inc. v. Chroma Technology Corp., 174 Vt. 10, 18 (2001) ("at-will employees may plan to compete with their employer even while still employed there and may freely compete with the employer once they are no longer employed there."); *see, also,* Restatement (Third) of Unfair Competition, § 42 (2009) ("[A]bsent an enforceable covenant not to compete, a former employee may utilize in competition with the former employer the general skills, knowledge, training, and experience acquired during the employment.").

### McAllister's Motion to Consolidate

On January 14, 2021, McAllister filed a motion asking the court to order that the trial on the merits be advanced and consolidated with the hearing on Plaintiffs' motion for a preliminary injunction. Such a procedure is allowed for by V.R.C.P. 65(b)(2). Plaintiffs oppose the motion on the grounds that extensive discovery will need to be done before the case can be heard on the merits, and the preliminary injunction hearing should not be delayed until then.

On January 19th the court proceeded with the preliminary injunction hearing, without advancing the trial on the merits. The court ordered, however, that evidence presented at the preliminary injunction hearing would not have to be repeated at the time of trial. That order may have to be reconsidered if a demand for a jury trial is hereafter made by any party.

### Conclusion and Order

For all the foregoing reasons: (1) Plaintiffs' motion for a preliminary injunction is *denied;* (2) the ex parte TRO issued by this court on January 8, 2021, is *vacated;* (3) Fred's Energy's motion to terminate or amend the TRO is *granted;* (4) the V.R.C.P. 12(b)(6) motions to dismiss filed by McAllister and Fred's Energy are *denied;* and (5) McAllister's motion to consolidate is *denied.*

On or before February 9, 2021, counsel shall confer and submit to the court a proposed stipulated scheduling order for this matter. If counsel cannot agree on a proposed scheduling order, each party shall submit his, her or its proposal to the court by the aforesaid deadline, and the court will select one of them.

.

SO ORDERED this 26th day of January, 2021.

_____
Robert A. Mello, Superior Judge

10